## GERHARD A. CORDES v. STATE

No. 26,979.   May 26, 1954

*Martin & Shown,* by *W. E. Martin, James Hill Letts,* and *C. C. Divine,* Houston, for appellant.

*Ewing Werlein,* District Attorney, *King C. Haynie,* Assistant District Attorney, Houston, and *Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for the murder of Cleora McCord by stabbing her with an ice pick, the punishment assessed being confinement in the penitentiary for life.

A former appeal was from a conviction wherein the punishment was death. Cordes v. State, 158 Texas Crim. Rep. 529, 257 S.W. 2d 704.

The admissibility of appellant's confession was attacked, and the jury being retired, evidence was offered before the trial judge on the question.

The evidence offered appears to be substantially the same as that offered on a similar hearing before the judge on the former trial, and we held that he did not err in admitting the confession in evidence, an issue of fact being raised which was for the jury.

With this holding before him, appellant seeks to now have us hold that no issue was raised and that the trial court should have excluded the confession and held it to be inadmissible as a matter of law.

Appellant's contention is that appellant made the confession through a combination of "inducements held out to him of a lesser punishment; inducement held out to him of a suspended sentence; psychological coercion calculated to overcome the resistance of any man; pleading and persuasion on the part of his fiancee; personal abuse; prolonged questioning by so many police officers he doesn't have any idea how many; locked up in a jail cell made for four with eight people in it."

Prior to the making of the confession, appellant had made a statement which he testified was voluntarily made without persuasion of any kind. This statement was offered in evidence before the court and contained the admission that he went to the apartment of the deceased shortly after 7:15 A.M. and left at approximately 7:40 A.M., after she declined to permit him to take her to work.

The relevancy and importance of this statement appears by reason of the following testimony.

Mrs. Easley testified that the apartment occupied by the deceased was about eight feet from her back door; that she saw appellant when he came in the back yard from the street about 7:10 A.M.; saw him go up the stairway to deceased's garage apartment and knock on the door; saw him, after a minute's delay, enter the apartment; did not see him leave but at about 7:45 she noticed that his car was gone.

Mrs. Blume, whose apartment was some thirty-five or forty feet away from that of the deceased, testified that she heard a noise coming from the kitchen of the garage apartment, then "heard this girl say 'Oh, no Shorty, Shorty'" and she "could hear the licks."

She reported to her husband and then went to the car parked nearby and wrote down the license number MH-4870. This car was driven away some twenty minutes later, according to Mrs. Blume. She estimated the time of hearing the noise, plea and licks as between 6:45 and 7:15 A.M.

The license number proved to be that issued to appellant.

Mrs. Robinson, who rented the garage apartment to the deceased, went to the apartment shortly after 9 A.M. and found the body of the deceased, Cleora McCord, in the bath tub and called the police.

An examination of the body revealed numerous stab wounds such as may have been made with an ice pick, and some bruises and abrasions.

The stab wounds were described as being, four "in the jaw, below the ear," nine in the abdomen just above the navel, the latter being the cause of her death according to the medical testimony. The ice pick was never found.

We revert now to the testimony produced before the court on the question of the admissibility of the confession, wherein he reiterated much of what he had said in his first statement, but also admitted having inflicted the wounds on the deceased while at her apartment.

The confessions were made to Lt. Frank L. Murray of the Houston Police, and he testified that the first statement "was strictly a voluntary statement, the same as the second one." He further testified that after the first statement which he accepted "probably not as the whole truth," appellant said he was going to make a statement and wanted to talk to Eva Kerr before he made it; asked that she be brought back after she had made her statement that appellant had been at her home just prior to his arrest; that she came or was brought back at appellant's request and not for the purpose of obtaining her assistance in persuading appellant to confess.

This officer admitted that he told appellant he should tell the truth and that it would be better for him to make a statement, but denied that he made any promise to him or suggested a lighter sentence or used any persuasion—"just talked to him about it."

Mrs. Eva Kerr was not in custody but did talk to appellant and prior to doing so the officers requested her to ask him to tell the truth. She appealed to him "on the basis of her love and friendship for him and for her children to make a statement" and she testified "I wanted him to confess because he knew and God knew whether he did it or not" and did not want him to confess whether guilty or not, but to tell the truth about it.

Appellant testified on the hearing to the effect that when he was permitted to talk to Eva Kerr he thought she was also in custody; that he loved her; knew that she was a sick woman— and after she appealed to him on behalf of her health and for the sake of herself and her children, he made the confession "to get the police to release Eva Kerr from their custody."

Without further discussion of the claimed "psychological coercion," "pleading and persuasion" on the part of Eva Kerr, we hold that the trial court did not err in admitting the confession and reserving for the jury the fact issue as to its voluntary character.

Appellant further testified that he was questioned by many officers during the interval between the making of the two statements, but admitted that he was not disturbed from 11 P.M. until the next morning.

The first statement was made at 1:10 P.M. on the day of the killing, and the second about 7:30 P.M. on the following day.

Both statements were first written in long hand by appellant in person.

The other grounds suggested for excluding the confession need not be discussed. Suffice it to say there is no showing of personal abuse, inducements or promises, and no undisputed facts which show as a matter of law that the confession should not have been admitted.

We remain convinced as we were on the original appeal that the trial court did not err in admitting the confession.

The confession having been admitted, appellant in the present trial did not see fit to attack the voluntariness of the confession before the jury. He thereby waived any right to have the jury pass upon that fact issue.

The evidence sustains the conviction and we find no reversible error.

The judgment is affirmed.